```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
S.R. GALVES PARTICIPACAO, IMPORTACAO
& EXPORTACAO LTDA,

                    Plaintiff,         06 Civ. 10182 (LLS)

          v.                           OPINION and ORDER

NATURAL SOURCE INTERNATIONAL, LTD
and THE BELJANSKI FOUNDATION

                    Defendants.
----------------------------------------x
```

Defendants Natural Source International, Ltd ("Natural Source") and The Beljanski Foundation move pursuant to Local Rule 54.2 for a bond as security for court costs. Natural Source also moves for an order requiring plaintiff, S.R. Galves Participacao, Importacao & Exportacao Ltda ("Galves"), to post a bond pursuant to Fed. R. Civ. P. 65 to secure the payment of storage fees for the goods at issue and for their destruction. Galves opposes those motions and moves for dismissal of Natural Source's counterclaim for tortious interference with potential business relationships.

## Background

In August 2004, Natural Source, a promoter and seller of dietary supplements, began placing purchase orders with

Galves, a Brazilian corporation, for shipments of Pao Pereira tree bark to Newark, New Jersey.  Natural Source extracts material from the bark to use in some of its dietary supplements.

Natural Source paid the first four purchase orders in full.  Four other shipments (identified as P29, P30, P31, and P22) were ordered between January 2006 and May 2006.  Natural Source did not accept those shipments because it says the bark arrived moldy, wet, and unfit for human consumption.  Upon placing the purchase orders for P29, P30, and P31, Natural Source paid for one-half the amount of each order.  It has not paid the remaining balance.  Natural Source paid order P22 in full, although it argues that the bark arrived one year late and in a moldy, wet condition.

The bark from the shipments at issue is currently being stored in a warehouse in Kenilworth, New Jersey.  Natural Source argues that Galves expressly directed it to store the bark rather than destroy it, and that Galves assured Natural Source that it would reimburse it for the storage costs.  On February 8, 2007 Galves's counsel informed defendants that the tree bark could be destroyed, but the parties did not come to an agreement on the terms of the bark's destruction.  Natural Source cannot stop

payment of the storage fees because it has an ongoing business relationship with the warehouse storing the bark. Natural Source has been paying $3,036 per month to store the bark, for a current total of $39,664, and it obtained a quotation of $17,299.50 for the bark's destruction.

Galves and Natural Source are both currently subject to a restraining order of a Brazilian court that prohibits them from exporting or importing any Pao Pereira tree bark from or to Brazil. The parties are attempting to have the restraining order lifted.

## Costs

New York C.P.L.R. § 8501(a) provides:

> ...upon motion by the defendant without notice, the court or a judge thereof shall order security for costs to be given by the plaintiffs where none of them is a domestic corporation, a foreign corporation licensed to do business in the state or a resident of the state when the motion is made.

Therefore, if Galves had brought this action in a New York state court, it would be required to post a bond for costs. The Federal Rules of Civil Procedure do not have a provision for ordering a party to post security for costs, but this federal court's Local Rule 54.2 states that "[t]he court, on motion or its own initiative, may order any party to file an original bond for costs or additional security

-3-

for costs in such an amount and so conditioned as it may designate."

"In diversity actions, federal courts are 'not bound to follow state rules on security for costs where a federal local rule granting discretion is applicable,' although they may look to state rules for guidance." Atlanta Shipping Corp., Inc. v. Chemical Bank, 818 F.2d 240, 251 (2d Cir. 1987), quoting Rapol v. Henry R. Jahn & Son, Inc., 84 F.R.D. 42, 45 (S.D.N.Y. 1979).

Galves is a Brazilian corporation without assets in New York.  Its financial situation is questionable (Galves sent e-mails to Natural Source stating that she is in debt and declaring herself "desperate" and "broke"). Defendants' April 16, 2007 Reply Memorandum of Law 4. Taking guidance from New York law, the Court will require Galves to post a bond for costs, because the circumstances justify it and had Natural Source been sued in state court, the bond would have been mandatory.  However, Galves argues that the amount defendants seek, $22,500, is excessive.

Defendants seek $1,000 for document translation, $2,000 for translators and reporters used during depositions, and $1,000 for a trial translator. Local Rule 54.1(c)(4) designates the reasonable fee of a translator as a taxable cost if the translated document is used or

received in evidence and if the fee of the witness involved is taxable.  Those amounts will be allowed.

Defendants ask for $2,500 for trial transcripts for five days of trial.  Trial transcripts are taxable as costs under Local Rule 54.1(c)(1).  However, the parties' scheduling order anticipates a trial lasting three to four days.  Therefore, Galves will only be required to post $2,000 for trial transcripts for four days of trial.

Defendants ask that Galves post $500 for the use of a reporter at the deposition of Galves's expert.  Under Local Rule 54.1(c)(2) costs for depositions are taxable if they are used or received in evidence at trial, or used by the court in ruling on a dispositive substantive motion.  Costs are not taxable for depositions taken solely for discovery.  Since the uses of Galves's expert's deposition may not be solely for discovery, Galves shall post $500 for defendants' costs.

Defendants also ask that Galves post $15,000 for payment of defendants' experts.  Local Rule 54.1(c)(3) provides that "[f]ees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained."  No court approval of taxing experts' fees as costs has been obtained, and therefore Galves will only be required to post the fee of $40 per day

-5-

as designated by 28 U.S.C. § 1821. Defendants ask for costs of two experts but do not specify how many days they are expected to testify at depositions and at trial. Galves must post a bond for costs for one day of depositions and one day of trial testimony for each witness, totaling $160.

Defendants estimate they will spend $250 on photocopies. Fees for "copies of papers necessarily obtained for use in the case" are taxable. 28 U.S.C. § 1920(4).

These sums total $6,910, which will be rounded to $7,000 as court costs for which Galves must post security.

## Bond for Storage Fees and Destruction

Natural Source seeks injunctive relief requiring Galves to post a bond as security for the storage fees for the bark at issue, and for its destruction.

> [A] party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.

Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).

Natural Source has been paying to store the bark at Galves's request. If no bond is posted, Natural Source may have no way to recover its expenses for the storage of the bark if it wins the case. Natural Source cannot return custody of the bark to Galves in Brazil because a Brazilian court has restrained Galves from importing Pao Pereira tree bark. Natural Source cannot merely stop paying for the bark's storage, because it has an ongoing business relationship with the warehouse currently storing the bark. Thus, the continuing present requirements that Natural Source pay for storage, and the unsecured amounts of prior payments, face it with the immediate threat of irreparable harm.

The questions going to the merits of this case include the condition of the bark when received and whether Natural Source accepted the bark. The balance of hardships tips in favor of Natural Source, which is currently paying the storage fees and would pay in the first instance for the bark's destruction. At the conclusion of this case, if it is found that Natural Source rightfully rejected the bark, Natural Source may be entitled to reimbursement for the bark's storage and destruction. The issues going to the merits of this case are fair ground for litigation, and until these issues are resolved, the balance of hardships

requires that Galves post security to assure Natural Source's reimbursement if it prevails in the litigation.

Natural Source has been paying $3,036 per month to store the bark at issue, for a current total of $39,664. The cost to destroy the bark is $17,299.50. Galves shall post a bond in the amount of $57,000 as security for the storage of the bark and for its destruction.

## Counterclaim

Galves moves to dismiss Natural Source's counterclaim for tortious interference with potential business relationships.

> [T]o prevail on such a claim, a plaintiff in New York must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.

Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003).

Natural Source states that Galves "has long been aware that Counterclaim-Plaintiff [Natural Source] relied on obtaining Pao Pereira tree bark from Brazil for use in its dietary supplement products and that Counterclaim-Plaintiff had successfully imported such bark from Brazil for many years before encountering Counterclaim-Defendant." Natural

-8-

Source's March 6, 2007 Answer, Affirmative Defenses and Amended Counterclaims ¶ 188. Because of Galves's "negligent or willful actions, the Brazilian federal court has issued a restraining order on any shipment of Pao Pereira bark by Counterclaim-Defendant and by Natural Source." Id. at ¶ 189. Natural Source alleges that Galves "has intentionally or with gross negligence interfered with Counterclaim-Plaintiff's ability to do business in Brazil and specifically to obtain needed supplies of the bark." Id. at ¶ 192.

Natural Source does not state that it had an existing business relationship with a third party. While "a continuing business or other customary relationship not amounting to a formal contract" is sufficient to state a claim, Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998), citing Restatement (Second) of Torts § 766B cmt. c (1979), there must be "a business relationship with a third party", Carvel Corp., 350 F.3d at 17, and "[t]he defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." Excellus Health Plan, Inc. v. Tran, 287 F. Supp. 2d 167, 177 (S.D.N.Y. 2003), quoting Fonar Corp. v.

-9-

Magnetic Resonance Plus, 957 F. Supp. 477, 483 (S.D.N.Y. 1997).

While Natural Source might have had business relationships to obtain Pao Pereira bark in the past, it does not plead a continuing relationship with any third party, nor does it plead that Galves's actions were directed at any particular third party.

Thus, Natural Source has not adequately stated a claim for tortious interference with potential business relations, although it may be able to replead such a claim, or one arising from Galves's alleged intentional use of an invalid license, knowing harm to Natural Source's business or relationships might result from its actions.  That will be left to counsel for Natural Source to determine and, if there is a viable claim, to replead.

Natural Source's counterclaim for tortious interference with potential business relations is dismissed with leave to replead.

## Conclusion

Galves shall post a bond in the amount of $7,000 as security for costs.  Galves shall post a bond in the amount of $57,000 for the storage or destruction of the bark.

-11-

Galves's motion to dismiss Natural Source's counterclaim for tortious interference with potential business relationships is granted. Natural Source has leave to replead.

So ordered.

Dated: May 21, 2007
       New York, New York

                                          *Louis L. Stanton*
                                        _____
                                          Louis L. Stanton
                                              U.S.D.J.